Rebecca K., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Edward L., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 9, 1977, before Judges CRUM-LISH, JR., MENCER and BLATT, sitting as a panel of three. Reargued September 13, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS, BLATT, DISALLE and CRAIG. Judges WILKINSON, JR. and MACPHAIL did not participate.

*C. Frederick Ryland,* with him *Stephen R. Krone,* and, of counsel, *William A. Duerk,* and *Perito, Duerk and Carlson,* P.C., for appellants.

*Linda M. Gunn,* Assistant Attorney General, for appellee.

OPINION BY JUDGE MENCER, December 20, 1978:

The appellants, identified only as Ms. Rebecca K. and Mr. Edward L., appeal to this Court from orders of the Pennsylvania Department of Public Welfare (DPW) denying them food stamp benefits. They have been residents of Blue Jay Village (facility), a drug treatment facility, since March and May 1976, respectively, and it is operated by the Abraxas Foundation, which is certified by the Drug and Alcohol Council of Pennsylvania as a nonprofit drug treatment and rehabilitation program. On behalf of the respective appellants, the Beaver and Allegheny County Commissioners paid $18.60 per day to the facility for their treatment, but the appellants also applied to the Forest County Board of Assistance for food stamps, which were denied. Forest County is the location of the facility, and the food stamps were denied on the basis that the payments by the other counties on behalf of the appellants were "vendor payments" and exceeded the maximum allowable monthly income eligibility standards for food stamps for a single-person household of $245 per month. On appeal, the hearing officer of DPW affirmed this finding, and it is from this determination that the appellants now appeal.

Under the provisions of Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.44, review by the Commonwealth Court of adjudications of DPW is to determine whether an error of law was committed, constitutional rights were violated, or a necessary finding of fact was unsupported by substantial evidence. *Department of Public Welfare v. Young*, 23 Pa. Commonwealth Ct. 523, 352 A.2d 582 (1976).

Under The Food Stamp Act of 1964 (Act)[1] and implementing regulations, the United States Department of Agriculture (USDA) administers a program in which low income households within participating states may purchase food stamps at a discount in order to maintain a nutritionally adequate diet. The Pennsylvania Department of Welfare administers the federal food stamp program in this Commonwealth and is responsible under the Act for the certification of applicant households and the issuance of coupons. *See* 7 U.S.C. §2019(b). In order to be eligible for food stamps, an individual applicant must meet the requirements of a qualifying household and must also meet financial eligibility standards. The eligibility of certain households, such as drug treatment centers,[2] is determined at the federal level under the Act, while the eligibility of others is determined by the states under uniform national income and resource standards set forth in the Act and federal regulations.[3]

The appellants argue that the payments made by these respective counties on their behalf, known as

---

[1] 7 U.S.C. §2011 et seq., *as amended*.

[2] Under the Act, household is defined to include "any narcotics addict or alcoholic who lives under the supervision of a private nonprofit organization or institution for the purpose of regular participation in a drug or alcoholic treatment and rehabilitation program." Formerly 7 U.S.C. §2012(e)(3).

[3] *See* 7 U.S.C. §§2014, 2019(e)(1) ; 7 C.F.R. §271.3(c).

vendor payments, may not be considered "income." Income is defined in the federal regulations to include "payments, except those for medical costs, made on behalf of the household by a person other than a member of the household," 7 C.F.R. §271.3(c)(1)(i)(h), and it has been previously held that vendor payments were properly includable as income in determining food stamp eligibility. *See Compton v. Tennessee Department of Public Welfare*, 532 F.2d 561 (6th Cir. 1976) (rent supplement paid on behalf of household); *Huerta v. Health and Social Services Department*, 86 N.M. 480, 525 P.2d 407 (1974) (disability insurance benefits paid on behalf of applicant). Recently, however, it has been held that the payment provision is void because the USDA failed to comply with the publication requirements of the Freedom of Information Act.[4] *Anderson v. Butz*, 550 F.2d 459 (9th Cir. 1977). The United States Court of Appeals in *Anderson, supra*, ordered the refund of any sums overcharged for food stamps because rent subsidies had been improperly included as income under the void vendor-payment provision. Here, the appellants were also denied food stamp benefits because the payments to the facility were included as income under the vendor-payment provision of DPW's regulation. DPW Pa. Manual Reference ¶3753.72110. *See Singer v. Department of Public Welfare*, 33 Pa. Commonwealth Ct. 198, 381 A.2d 225 (1978). They argue, therefore, that the denial of benefits, based upon the state vendor-payment provision, which is identical to and based upon the now invalid federal regulation, is in violation of federal law. We believe, however, that because DPW is authorized to promulgate its own regulations for our state plan of operation under the Act, 7 U.S.C. §2019, its vendor-payment regulation does not

---

[4] 5 U.S.C. §552.

automatically fail under *Anderson, supra,* absent a procedural or substantive defect of its own and absent violation of any federal regulation or the Act. *See McDaniel v. Department of Public Welfare,* 29 Pa. Commonwealth Ct. 190, 370 A.2d 417 (1977). *See also Department of Public Welfare v. Temple University,* 21 Pa. Commonwealth Ct. 162, 343 A.2d 701 (1975); *Bowen v. Department of Public Welfare,* 21 Pa. Commonwealth Ct. 144, 343 A.2d 690 (1975).

The appellants argue in the alternative that, even if vendor payments are considered income, the payments made on their behalf are payments for medical care and are not vendor payments and should be deducted as payments for medical expenses.[5] Income in the form of vendor payments is defined in the DPW regulations as follows: "Payments in money *except those for medical costs,* made on behalf of the household by a person other than a member of the household. Such payments may be made by private

---

[5] Payments for medical expenses are deductible under 7 C.F.R. §271.3(c)(1)(iii)(c), which provides in pertinent part:

> (iii) Deductions for the following household expenses shall be made (this list is inclusive and no other deductions from income shall be allowed):
>
> . . . .
>
> (c) Payments for medical expenses, exclusive of special diets; when the costs exceed $10 per month per household.

Pa. DPW Manual similarly provides:

> 3753.722   *Income Exclusions*
>
> Income from certain sources are excluded for Food Stamp purposes under mandate of law. . . . Only the following payments received by household members will not be considered income to the household:
>
> . . . .
>
> 3753.7225   *Medical Vendor Payments*
>
> Payments in money for medical costs made on behalf of the household by a person other than a member of the household.

or government sources." (Emphasis added.) DPW Pa. Manual ¶3753.72110. It is clear that drug addiction must be considered an illness, for the United States Supreme Court has held a statute designating drug addiction a crime to be unconstitutional on the ground that it resulted in the infliction of cruel and unusual punishment for the mere contraction of an illness. *Robinson v. California,* 370 U.S. 660 (1962). The testimony here indicates that the payments to the facility were to cover the residents' food, clothing, transportation, counseling, and medical expenses, but appellants contend that the entire payment should be considered to be for medical care because the treatment of the illness of drug addiction requires a total environmental approach involving mind and body and that the essential medical treatment of drug addiction is a 24-hour-a-day drug-free environment.

While it is conceded that some portion of the payment made by the county commissioners on behalf of the appellants is for medical expenses, there was no showing at the time of application or at the hearing as to what that portion was in the instant cases. We deem it incumbent upon the applicant to demonstrate what portion of the payments was for medical care. Absent evidence concerning the medical expense factor, DPW's decision to treat these payments as vendor payments and to include them in their entirety as income for purposes of food stamp eligibility was proper.

Appellants' other major contention is that the denial of food stamp benefits to residents of a drug treatment program funded on a per capita basis, when residents of similarly funded programs and block-grant programs receive food stamps, is violative of equal protection and therefore repugnant to the Fourteenth Amendment of the United States Constitution. This contention fails to give importance to the dis-

tinction between vendor payments and those payments that are essentially in-kind benefits.

Our study of the issue compels us to conclude that the Secretary of Agriculture properly adopted a policy of considering cash payments as income and payments-in-kind not as income and that such a policy is reasonable and is designed to assure uniformity and prevent inequities that would result from the requirement that food stamp certification personnel in each state appraise and assign subjective dollar values to benefits in services not provided as cash payments. Requiring states to assign monetary values to in-kind payments would defeat the objective of assuring that applicants for food stamps be evaluated according to a national standard and not by different standards prescribed by the states wherein they apply. This distinction is in accord with the 1971 amendments to the Act which authorized the Secretary of Agriculture to "establish uniform national standards of eligibility." 7 U.S.C. §2014(b).

Although we recognize the unintended advantage the distinction accords block-grant programs, when reflecting upon the larger context of the validity of the distinction, we must be guided by the following set forth in *Dandridge v. Williams,* 397 U.S. 471, 485 (1970):

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 55 L.Ed. 369, 377, 31 S.Ct. 337. 'The problems of government are practical ones

and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 57 L.Ed. 730, 734, 33 S.Ct. 441. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 6 L.Ed. 2d 393, 399, 81 S.Ct. 1101.

To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard.

In summation on this issue, we cannot express the matter better than did the Court of Appeals for the Sixth Circuit when it stated, in *Compton v. Tennessee Department of Public Welfare, supra* at 568:

In upholding the challenged classification, we do not suggest it is the best or only reasonable solution of where to draw the line between what should and what should not be included as income for the purposes of the administration of the Food Stamp Act. That is not our role. We conclude only that the classification created by the Secretary's distinction between in kind benefits and vendor payments has a reasonable basis and is not violative of equal protection.

Accordingly, we hold that DPW did not err in determining that the appellants were ineligible for food stamp benefits.

## ORDER

AND Now, this 20th day of December, 1978, the orders of the Pennsylvania Department of Public Welfare in the above captioned cases are hereby affirmed.

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

I believe that the entire payment made on behalf of the appellants for the residential drug-rehabilitation program should have been deemed medical expenses. The money received by the facility on behalf of the appellants is solely for the purpose of their care, maintenance and treatment and would not be received by the appellants unless they were residents of this drug-rehabilitation program. Indeed, the essential element for the treatment of drug addiction is a total 24-hour-a-day drug-free environment. I would therefore conclude that the Pennsylvania Department of Public Welfare (DPW) erred in denying the medical exclusion to the appellants.

Furthermore, I believe that the DPW erred in finding this facility was "not exclusively a medical facility offering only medical care" because the record indicates that it operates solely for the treatment and rehabilitation of its residents' illness.