465 A.2d 1064

**Charles SKOLNICK and Sarah Skolnick, His Wife, Appellants,**

**v.**

**FORD MOTOR CREDIT COMPANY.**

Superior Court of Pennsylvania.

Argued March 23, 1983.

Filed Sept. 16, 1983.

Petition for Allowance of Appeal Granted Jan. 19, 1984.

84

Joel Weisberg, Harrisburg, for appellants.

William H. Lowery, Philadelphia, for appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

On July 10, 1978, John Kennedy Ford, a motor vehicle sales corporation, contracted in writing to sell a used 1974 Chevrolet Caprice to appellants, Charles Skolnick and Sarah Skolnick, husband and wife. The cash price of the vehicle was $2,515.00; appellants made a down payment of $600.00, leaving an unpaid cash price balance of $1,915.00. Use and sales tax of $150.90, along with registration fees of $43.10, were added to the unpaid cash price balance, culminating in a principal amount financed of $2,109.00. A finance charge of $629.70 was added to the principal amount financed and a time balance of $2,738.00 was reached. A deferred payment price of $3,338.70 was derived from adding the down payment to the time balance. Twenty-nine monthly installments of $91.29 and one installment of $91.29, commencing on August 24, 1978, were set forth in the agreement. Following execution of the agreement and prior to commencement of the lower court action, John Kennedy Ford assigned the contract to appellee, Ford Motor Credit Company.

On January 30, 1980, appellants filed a Complaint in Assumpsit in the Court of Common Pleas of Philadelphia County against appellee for alleged violations of the Motor Vehicle Sales Finance Act,[1] hereinafter "MVSFA", and the Pennsylvania Maximum Interest Rates Law,[2] hereinafter "Interest Law". According to appellants, the alleged violations were predicated upon appellee's use of an annual finance charge rate of 21.35%, computed on a simple interest basis. The MVSFA authorized a maximum finance charge rate of 12% on the installment sale of the class of motor vehicles[3] to which the 1974 Chevrolet Caprice belonged.

Appellants filed the assumpsit complaint as a class action under Pa.R.C.P. No. 1701 on behalf of several thousand

1. Act of June 28, 1947, P.L. 1110, § 1 et seq., 69 P.S. § 601 et seq. (as amended).

2. Act of January 30, 1974, P.L. 13; 41 P.S. § 101 et seq. (as amended).

3. 69 P.S. § 619(A).

individuals and entities purchasing used motor vehicles from appellee beginning with July 10, 1978, and thereafter. Appellants sought for themselves and other class members a permanent injunction enjoining appellee from continuing its practice of charging unlawful interest rates to purchasers of used motor vehicles under installment-sale contracts and damages of triple the amount of interest in excess of the maximum amount permitted under the MVSFA. Damages were pursued according to the calculation provided for in the Interest Law. 41 P.S. § 502. Appellants also included within their prayer a demand for reasonable costs, expenses and attorney fees pursuant to § 503 of the Interest Law.

Appellee filed a petition for the removal of the proceedings to the United States District Court for the Eastern District of Pennsylvania; however, in response to appellants' motion to remand, the District Court remanded the case to the Court of Common Pleas of Philadelphia County. Thereafter, appellee filed a motion for summary judgment; it was granted and judgment was entered for appellee. Appellants filed this timely appeal from the Order, dated October 29, 1981, granting appellee's motion for summary judgment.

Pursuant to the filing of appellee's motion for summary judgment, the parties stipulated as to the facts, including the terms of the installment contract discussed above. Additionally, it was stipulated that the MVSFA, applicable to the retail installment sale herein, became effective June 28, 1947, and its administration and enforcement has been entrusted since that time to the Pennsylvania Department of Banking; that the 1974 Chevrolet Caprice was a Class III vehicle as defined in § 619(A) of the MVSFA; therefore, an annual maximum finance charge rate of 12% for an installment sale of such a vehicle was applicable; that the Department of Banking has continuously computed the maximum finance charge permitted under § 619 according to an "add-on" interest rate; that this Department of Banking policy has been made known to all sellers and sales finance companies licensed under the MVSFA; that the "add-on"

method is applied by multiplying the principal amount financed (here $2,109.00) by the maximum interest rate permissible under § 619(A) (12%), and the product is in turn multiplied by the contractual payment period (here 2.5 years);[4] that the actual finance charge rate applied by the parties, computed on an "add-on" basis, was 11.94%; that the simple interest rate, also known under the Federal Truth and Lending Act as the "annual percentage rate", had it been applied by appellee, was 21.35%.

The parties, therefore, agree on all pertinent facts; their dispute concerns the proper application of the law. Appellee's foremost argument is that usury laws do not apply to finance charge rates due to the fact that such rates cannot be construed as interest. Alternatively, appellee maintains that, providing interest laws are applicable, interest computed on the "add-on" basis was properly applied here. Conversely, appellants aver that finance charge rates are indeed subject to usury laws and that simple interest, not "add-on" interest, is applicable to installment sales under the MVSFA.

Prior to addressing the issues, we deem it advisable to discuss and distinguish the interest methods espoused by the respective parties.

Interest is chargeable, not in excess of 12% per annum, on the loan of money for the sale of a Class III vehicle. 69 P.S. § 619(A). Section 619(A) does not specify whether such interest is applied through the simple interest method, "add-on" method or some other method. Assuming simple interest is applicable, interest earnings are reduced proportionately as the principal amount borrowed decreases during the term. A simple interest rate of 21.35% would be necessary to reach the finance charge of $629.70 on the two and one-half year loan of $2,109.00 here. Clearly, usury laws would be violated.

Instead, however, the "add-on" method was utilized by appellee's assignor. Contrary to the application of simple

4. By Act of June 18, 1982, P.L. 553, § 1; 69 P.S. 619(A), 21% simple interest per year on the unpaid balance of the purchase price of Class III vehicles was substituted for 12% per year.

interest, interest is charged under this method on the original amount financed during the entire financing term, irrespective of the fact that the principal sum is gradually reduced. Consequently, as previously stipulated, the principal amount financed is first multiplied by the maximum lawful interest rate permissible (here 12%) under the applicable statutory section. That product is in turn multiplied by the term of years during which the unpaid balance is financed (here 2.5 years). The finance charge of $629.70 was derived here through the application of an "add-on" interest rate of 11.94%, certainly not in excess of the 12% statutory maximum.

Whether the simple interest or "add-on" interest rate is applicable to installment sales under the MVSFA is not a novel issue for this court. It was addressed in *Dear v. Holly Jon Equipment Company*, 283 Pa.Super. 74, 423 A.2d 721 (1980). There, Robert and Ruth Dear purchased a tri-axle dump truck. The finance charge assessed against the unpaid portion of the purchase price of $32,822.00 was the product of applying the "add-on" interest method. The dump truck was a Class IV vehicle as set forth in § 619(A), rendering 7½% per year the maximum lawful interest rate.

In response to the Dears' contention that the amount of interest charged was in excess of 7½%, the *Dear* court began with a reference to those statutory clauses defining "Class IV vehicles", "finance charge" and "principal amount financed." Its perusal of the language in those clauses convinced the *Dear* court that simple interest rates were not applicable; and that had the legislature intended simple interest rates to apply to the financing of vehicles under § 619(A), it could have easily provided for it. Further evidence that simple interest was not intended, according to the *Dear* court, was reflected in § 622's reference to a rebate of the "unearned interest charge". Simple interest does not accumulate in advance, rather it is paid only as it accrues on the principal balance remaining. Therefore, no simple interest is available to be refunded in the event of pre-payment. The refund of the "unearned interest

charge" is comprehensible only in view of a finance charge calculated on the "add-on" basis where interest is applied to the initial unpaid balance for the *entire* financing term. Similarly, the parties in *Dear* stipulated that the interest rate on an "add-on" basis was 7½%; consequently, it was not in excess of the statutory limit, while simple interest was applicable at an excessive rate of 13½%.

■ Next, in further rejection of the Dears' position, the *Dear* court noted the Department of Banking's thirty-year policy of computing finance charges on an "add-on" basis and concluded that, had the legislature intended a computation according to simple interest rates, it would have reversed the Department's policy prior to the *Dear* proceedings. Finally, the *Dear* court concluded that the Usury Act, with its maximum interest rates, has been deemed by Pennsylvania courts to be inapplicable to a "bona fide sale of goods on credit."[5]

Both parties here agree that the *Dear* decision directly addresses their dispute. Appellants would have us reverse *Dear* and prohibit the use of "add-on" interest to compute finance charges under the MVSFA. We are disinclined to do so.

We subscribe to the analysis employed by the *Dear* court. Moreover, we expand its interpretation of the appropriate statutory provisions. This dispute arises from the absence of a definitive provision within the MVSFA setting forth the proper method of calculating interest. "Finance charge" is defined in § 603(14), and "finance charge rates" are set forth in § 619(A), according to three classes of vehicles. These provisions are ambiguous insofar as they fail to

---

**5.** It seems that whether the Usury Act is applicable is not determinative. The Act provides that interest rates cannot exceed the maximum lawful rate "provided by the Act or *otherwise by law*" (Emphasis added). The phrase "otherwise by law" authorizes the legislature, through the provisions of other Acts of General Assembly, to set a particular interest rate for that legislation only. Indeed, this was done through the MVSFA where financing for four classes of motor vehicles was computed with the application of different interest rates. Since the *Dear* court authorized the application of interest on an "add-on" basis, the 7½% "add-on" rate utilized was not in excess of that permitted by the Usury Act.

identify the interest rate as one based upon simple interest or "add-on" interest methods.

■ The Rules of Construction of the Pennsylvania Consolidated Statutes provide in 1 Pa.C.S.A. § 1921(c) accordingly:

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (8) Legislative and administrative interpretations of such statute.

This maxim of statutory construction was utilized where the judiciary submitted to the longstanding interpretation applied by the Department of Public Welfare to the federal food stamp program in Pennsylvania, *Spicer v. Commonwealth, Dept. of Public Welfare,* 58 Pa.Cmwlth. 558, 428 A.2d 1008 (1981); to the Public Utility Commission's interpretation of the certificate exemption provision of the Public Utility Code, *Chappell v. Pennsylvania,* 57 Pa.Cmwlth. 17, 425 A.2d 873 (1981); and, the Department of Health's belief that it possessed regulatory authority under the Public Welfare Code, *Hospital Ass'n of Pennsylvania v. MacLeod,* 487 Pa. 516, 410 A.2d 731 (1980). These decisions demonstrate the judiciary's reluctance to disrupt administrative practice derived from a sound interpretation of statutory provisions. We follow this precedent of acknowledging legislative and administrative interpretation due to the equivocal language within the MVSFA and appellant's inability to convince us that the Department of Banking's thirty-year practice of calculating the finance charge according to the "add-on" method is unreasonable.

It must also be noted that § 619 of the MVSFA had been amended on five occasions between its enactment in 1947 and 1980, yet a particular interest rate calculation has never been specified. We view this as a further indication that the Department of Banking's interpretation was approved sub silentio.

■ In 1982, by Act of June 18, 1982, P.L. 553, No. 160, § 1, 69 P.S. § 619, the maximum interest rate chargeable on

the principal amount financed was increased for the installment sale of each of the four classes of motor vehicles and the designation "simple interest" was added for the first time. The interest ceiling for Class III vehicles rose from 12%, the rate in effect at the time of the execution of the installment sales agreement by appellants and John Kennedy Ford, to 21% under the 1982 amendment. This significant increase in the percentage rate indicates the transformation from interest previously applied on an "add-on" basis to interest applied on a simple interest basis. Simple interest rates are generally double the percentage of "add-on" rates where both methods compute the same finance charge; consequently, the significantly higher percentage provided in the 1982 amendment was properly attributed to simple interest. We consider this last amendment as further evidence of the approved use of "add-on" interest prior to 1982.

■ Having determined that the finance charge rate was properly calculated by appellee's assignor on an "add-on" basis, we need not address appellee's argument concerning applicable penalty provisions.

Order affirmed.