530 A.2d 520

Phyllis Sharp, Executrix of the Estate of Richard G. Sharp, Petitioner *v*. Commonwealth of Pennsylvania, Pennsylvania Crime Victim's Compensation Board, Respondent.

Argued December 9, 1986, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Michael H. Landis,* with him, *Ronald Jay Smolow, P.C.,* for petitioner.

*Amy Zapp,* Deputy Attorney General, with her, *Andrew S. Gordon,* Chief Deputy Attorney General; and

*LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, August 19, 1987:

This is an appeal by Phyllis Sharp (claimant) from an order of the Crime Victim's Compensation Board (Board) which denied her request for compensation in connection with the death of her husband, Richard Gary Sharp (victim), who died when attacked in his place of business during an armed robbery.

The Board determined that the victim was forty years of age at the time of his death on June 17, 1983. It further determined that there was no relationship between the victim and the alleged offenders and that there was nothing to show that the victim had provoked the attack upon him, which attack occurred while the victim was at work in his drugstore. It is undisputed that the claimant fully cooperated with investigating authorities in the matter of her husband's death.

The Board also determined that, as a direct result of the crime, the claimant incurred the following out-of-pocket losses for medical care and treatment and funeral services for the victim:

| PROVIDER | CHARGE | INSURANCE PAID | CLAIMANT PAID | BALANCE DUE |
|---|---|---|---|---|
| (a) Lower Bucks Hospital 6/17/83 | $1,667.15 | -0- | $1,667.15 | -0- |
| (b) Riverside Memorial Chapels, Inc. | 2,783.00 | -0- | 2,783.00 | -0- |
| TOTAL | $4,450.15 | -0- | $4,450.15 | -0- |

Additionally, the Board found that the claimant incurred a loss of support computed as follows:

Earnings from Self-Employment. . . .$24,796.00
*Less* Income and Self-Employment
Taxes . . . . . . . . . . . . . . . . . -3,973.00
Net Annual Earnings . . . . . . . . . . 20,823.00

Pursuant to its regulations, the Board, attributed eighty percent of the victim's net annual earnings as support to the claimant, thus arriving at a sum of $16,658.40. This figure was then multiplied by 23.2 years, the average estimated remaining labor force participation of the victim based upon the publication, *Pennsylvania Damages-Personal Injury Verdicts* by Troutman. The Board determined, therefore, that the claimant incurred a total loss of support in the amount of $386,474.88, *i.e.*, (23.2 x $16,658.40). When the $4,450.15 the claimant paid out of her pocket for medical care and funeral expenses is added to this sum, the final figure, which represents the claimant's total loss, is $390,925.03.

The Board then determined that the claimant "received or will receive" the following payments:

| | |
|---|---|
| Life insurance policies and death benefit payments . . . . . . . . . . . | $335,706.49 |
| Social Security, Heather, born 3/11/71, $390.00 monthly x 70 months . | 27,300.00 |
| Social Security, Andrea, born 10/31/76, $390.00 monthly x 136 months . . . . | 53,040.00 |
| Social Security, claimant's behalf, $390.00 monthly x 112 months . . . . | 43,680.00 |
| Total payments . . . . . . . . . . . | $459,726.49 |

Based upon these figures, the Board determined that because the claimant would receive $459,726.49, and her expenses were only $390,925.03, the payments she would receive as a result of the crime exceeded her financial loss by a total of $68,801.46, and for this reason it denied her request for compensation. Further, having denied her claim for compensation, the Board did not reach the question of whether or not she was entitled to attorney's fees.

The claimant asserted before the Board and asserts again before this Court that the Board's calculations were in error because, in determining loss of support,

the Board should have: 1) calculated the victim's income before depreciation; 2) included social security payments which would have been due the victim had he survived, the appreciation in value of the marital home, and the loss of health insurance benefits; 3) considered that the claimant had to utilize insurance payments payable to the victim's estate to pay business debts and administrative expenses and, hence, these payments should have been subtracted from the amount she received. The claimant also contends that it was error for the Board to have failed to consider awarding her attorney's fees merely because it found that she was not entitled to an award of compensation.

Preliminarily, we note that our scope of review is limited to determining whether or not there has been a constitutional violation or an error of law, and whether or not the necessary findings of fact are supported by substantial evidence on the record. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. We further note that the sums of money here are not in dispute in and of themselves; rather, what is in dispute is *how* those sums of money should be credited and offset.

Section 477.9 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 71 P.S. §180-7.9 (Act)[1] provides in pertinent part:

> (b) Any award made pursuant to the provisions of this act shall be in an amount not exceeding out-of-pocket loss, together with loss of past, present or future earnings or support[2] resulting from such an injury. In no case shall the total amount of an award exceed thirty-five thousand dollars ($35,000).

---

[1] Section 477.9 was added by Section 2 of the Act of July 9, 1976, P.L. 574, *as amended*.

[2] The terms "earnings" and "support" are not defined in the Act.

(c) Any award made for loss of earnings or support shall . . . be in an amount equal to the actual loss sustained. . . .

. . . .

(e) [A]ny award made pursuant to this act shall be reduced by the amount of any payments received or to be received by the claimant as a result of the injury . . . under any contract of insurance wherein the claimant is the insured beneficiary. . . .

The Board is empowered, pursuant to Section 477.2(c) of the Act,[3] 71 P.S. §180-7.2(c), to promulgate rules and regulations to carry out the provisions of the Act. To this end, it has promulgated a regulation, entitled Computation of loss of support, 37 Pa. Code §191.9b. This regulation provides in pertinent part:

*When the claimant is the surviving spouse with dependent children.* The following steps will be followed:

. . . .

(2) When there is no court order for support, the following steps will be followed:

(i) Determine the net annual income of the victim by subtracting social security tax, Federal

---

[3] Section 477.2 was added by Section 2 of the Act of July 9, 1976, P.L. 574, *as amended,* and provides that among other powers and duties, the Board shall have the authority:

(c) To adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions and purposes of this act, including rules for the approval of attorney's fees for representation before the board or before the Commonwealth Court upon judicial review as provided for in section 477.7 of this act. Awards of the attorney's fees shall be in addition to awards made to victims. Awards of attorney's fees shall in no case exceed fifteen per centum of the award to the victim or victims. It shall be unlawful for an attorney to contract for or receive any sum larger than the amount allowed.

income tax, State income tax and local wage taxes from the gross earnings for the 12 months immediately preceding the occurrence of the crime.

(ii) For self-employed victims, determine the net annual profit excluding bad debt entries for the calendar year immediately preceding the occurrence of the crime. Subtract the tax liabilities for social security tax, Federal income tax, State income tax and local wage taxes to establish the net adjusted profit.

(iii) Attribute 80% of the net adjusted profit as support to the surviving dependent.

(iv) Determine the average number of remaining years of labor force participation by the victim by use of the publication **Penna. Damages—Personal Injury Verdicts,** Troutman.

(v) Determine the average number of remaining years of life for the claimant by use of the publication **Penna. Damages—Personal Injury Verdicts,** Troutman.

(vi) Multiply the net annual loss of support by the average number of remaining years of labor force participation by the victim.

(vii) Multiply the net annual loss of support by the average number of remaining years of life of the claimant.

(viii) The total loss of support will be whichever figure is the lower.

The claimant does not argue here that this regulation was not followed. Rather, she argues that the regulation itself is in contravention of the Act and that the Board's determination as to what items constitute loss of support and payments received are unreasonable. Essentially, her arguments can be broken down into two major categories: those asserting error in computing the

amount of support she lost, and those asserting error in computing the amount of payments received, which payments required offsetting.

The claimant asserts that she suffered a loss of support because the Board failed to credit social security payments which the victim would have received upon his retirement, health insurance payments which the victim made on behalf of his family through his business, and the annual appreciation of the family home. The Board, in response, maintains that its calculations are consistent with the regulations and that the regulations themselves are valid.

We have often said that regulations which an agency promulgates under the authority given it by statute are entitled to great weight and should not be overturned or disregarded except for cogent reasons and unless it is clear that the agency's construction of its own statute is erroneous. *See e.g. Spicer v. Department of Public Welfare*, 58 Pa. Commonwealth Ct. 558, 428 A.2d 1008 (1981). Further, we have previously stated in *Hoffman v. Pennsylvania Crime Victim's Compensation Board*, 46 Pa. Commonwealth Ct. 54, 405 A.2d 1110 (1979), that the Act's purpose is to compensate innocent victims of crime for economic losses sustained by them for which they will receive no other compensation. We also opined in *Hoffman* that, within the limitations set forth in the Act, the program makes up the difference between what a victim has lost economically and what a victim has received economically as the result of a crime. *See also* Section 3 of the Act. It is beyond dispute that the Act's purpose is a benevolent one. We must also keep in mind, however, the economic realities of the world in which we live and the fact that there are limited resources available here. Such realities are recognized in the Act itself, in Section 477.9(b), which specifically limits an individual recovery to $35,000.

Keeping the aforementioned principles in mind, we must hold that the fact that the Board's formula for computing loss as set forth in its regulations does not take into account every conceivable type of income a victim may have had at the time of death, does not indicate that the Act's general benevolent purpose has been disregarded by the Board's regulation. It does indicate, however, a rational attempt to conserve funds so that *more* victims of crimes will be able to receive awards (although the awards might be smaller). In short, we do not read the regulations as being plainly inconsistent with the Act and, therefore, we must uphold the Board's determination here to exclude loss of health insurance, annual appreciation of the family home, and whatever social security benefits the victim might expect to receive later in life in calculating loss of support.

In a related contention, the claimant argues that the Board erred by using the amount of business profits listed on the victim's 1982 federal income tax return to calculate his income, while deducting depreciation deductions and self-employment taxes. The Board in its brief points out, however, that, in self-employment situations, it is often difficult to obtain an accurate view of an individual's income because it is possible to devise a loss statement for the purpose of avoiding taxes. This is not to suggest that the present claimant or the victim did so. But it does lend credence to the Board's position that individuals, who create business losses for the purpose of avoiding taxes, should not be able to ask the government, whose taxes they are avoiding, to provide compensation in an amount unrelated to the income they have declared. It is for this reason that the Board insists that depreciation be deducted. Under our limited scope of review, we cannot say that this position is erroneous as a matter of law or that it contravenes the Act.

The claimant's other major contention is that the Board erred in computing the amount of payments she received by crediting her with receipt of the proceeds of an insurance policy in which the named recipient under the policy was the claimant, herself, *in her capacity as executrix*. She argues that the money from that policy went not to her but to the victim's estate, for payment of estate expenses and business debts. Section 477.9, of course, does authorize the Board to deduct insurance proceeds where "the *claimant* is the insured beneficiary." (Emphasis added.) And, although there may be times when a claimant, as a beneficiary, actually receives money under a victim's insurance policy, a finding that this has occurred can be justified only by making specific factual findings in an individual case. And, to the extent that the proceeds are used to pay the estate's expenses, we fail to see how that portion of the money constitutes a payment to the claimant. To so find, of course, is to invalidate Board regulation 191.1 (vii), 37 Pa. Code §191.1 (vii), which provides that "[a]n award may not include compensation for expenses incurred in the administration of the estate of a deceased victim." We can determine no rational basis, however, for this regulation, nor do we believe that it is consistent with the purposes of the Act. We must hold, therefore, that it must be struck under the pronouncements of *Spicer*.

Normally, of course, because we have found error in the Board's offsetting here, a remand would be necessary for additional findings of fact on what portion of the money received is attributable to expenses for the estate and what portion went to the claimant and her dependents. In this case, however, even if the receipt of the entire $50,000 benefit under the insurance policy were credited to the estate, the claimant would still be receiving payments of $18,000 more than her total loss

of support. A remand here, therefore, is clearly not necessary.

Finally, the claimant argues that the Board erred in denying her attorney's fees. It is clear that the Act gives the Board the power to award attorney's fees. *See* Section 477.2, 71 P.S. §180-7.2; *see also* 37 Pa. Code §191.7(b), (e). Section 477.2 clearly states that awards of attorney's fees shall be in addition to awards made to victims and further states that attorney's fees shall in no case exceed fifteen percent of the award to the victim. From this language we perceive a legislative intent that an award of attorney's fees be made only in instances where the claimant has prevailed before the Board and received an award.

Based upon the foregoing, the order of the Board is affirmed.

## ORDER

AND NOW, this 19th day of August, 1987, the order of the Crime Victim's Compensation Board in the above-captioned matter is hereby affirmed.

Judge DOYLE dissents.